Filed 2/17/22  P. v. Rodriguez CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>CARLOS DANIEL RODRIGUEZ, JR.,<br><br>     Defendant and Appellant. | C093215<br><br>(Super. Ct. No. CR19-5607) |

Defendant Carlos Daniel Rodriguez, Jr., appeals from his conviction for two counts of robbery with weapons enhancements.  Defendant contends the trial court erred under *Batson v. Kentucky* (1986) 476 U.S. 79 and *People v. Wheeler* (1978) 22 Cal.3d 258 by denying his motion arguing that the prosecutor exercised a peremptory challenge to excuse prospective juror F.Y. based on his race.  Defendant also claims the court abused its discretion by admitting evidence related to his arrest and his gang membership.

We agree only that the court abused its discretion by admitting evidence related to defendant's arrest, but conclude the error was harmless and affirm the judgment.

1

**FACTS AND PROCEEDINGS**

*Factual Background*

Jorge knew defendant from grade school and had purchased marijuana from him once or twice without incident. On August 6, 2019, defendant posted on social media that he had marijuana for sale, and Jorge contacted him about buying one or two ounces for $400 to $500. Defendant and Jorge agreed to meet that afternoon in Woodland.

Jorge brought his stepbrother Diego to the meeting. Jorge kept cash to purchase the marijuana locked in the glove compartment of his car. After Jorge arrived at the meeting location, a Chevrolet Malibu parked behind Jorge's car. Defendant got out of the passenger seat of the Malibu and came up to Jorge's car. Jorge asked if he could see the marijuana, and defendant agreed. Jorge got into the backseat of the Malibu, and defendant got into the front passenger seat; a man Jorge recognized but whose name he did not know was in the driver's seat.

The driver pulled a gun out of a bag between his legs, pointed it at Jorge, and locked the car doors; the driver and defendant asked Jorge where the money was. When Jorge did not answer, defendant told the driver to shoot Jorge in the leg, but no shots were fired. Jorge said he did not have the money on him, and defendant and the driver accused Jorge of trying to rob them. The driver punched Jorge twice in the face and took his phone.

Defendant got out of the Malibu and searched Jorge's car, taking Jorge's knife. He returned to the Malibu and again asked Jorge where the money was while holding the knife. He searched Jorge's car again, taking Diego's phone, Jorge's sunglasses, their driver's licenses, and a bottle of alcohol. When he returned, Jorge screamed for help and told defendant and the driver that Diego had already called someone for help; they then let Jorge go.

Jorge got back into his car and chased the Malibu for less than a minute; he was mad at defendant and the driver for pointing a gun and knife at him. He stopped chasing

2

them and picked up his girlfriend before going to the police station to report the robberies. Jorge described the robberies to Officer Gina Bell, and he stated that the gun used was black and brown and was not a revolver, but was rather a "square one," which the officer understood to mean that the gun was a semiautomatic pistol. He told Bell that he had agreed to purchase one ounce of marijuana from defendant for $150. Bell observed that Jorge was visibly upset and had a swollen lip. At trial, Jorge testified that the gun was "all black."

On August 8, 2019--two days after the robberies--defendant was arrested in a motel room in Sacramento County with a man who was not the driver on August 6. Officers searching the motel room found a loaded Glock-style handgun with a raised red dot sight, brown or gold-colored ejection port, and a gold or bronze barrel, a loaded Glock-style magazine, a kilogram of powder cocaine, half an ounce of methamphetamine, a pipe used to smoke methamphetamine, approximately 20 Vicodin pills, 190 ecstasy pills, $1,700 in cash found on the other man's person, and four cell phones, one of which defendant claimed was his. None of the four phones seized were the phones taken from Jorge and Diego.

An investigator from the district attorney's office spoke with Jorge after defendant's arrest and showed him pictures of the gun that had been seized during the search. At trial, Jorge testified that the gun from the motel room was similar to the gun used in the robbery because they were both black, but the gun from the motel room had a red dot attachment and a gold or brown "front." He did not get a detailed look at the gun during the robbery and was unable to say definitively whether it was the same gun used during the robberies. The investigator testified that Jorge provided no information linking the seized gun to the one used in the robberies. The events related to defendant's arrest were separately prosecuted in Sacramento County.

3

*Verdict and Sentence*

A jury found defendant guilty of two counts of second degree robbery. (Pen. Code, §§ 211, 212.5, subd. (c); counts 1 and 2.) As to count 1--the robbery of Jorge--the jury found true that a principal was armed with a firearm (*id.*, § 12022, subd. (a)(1)), and as to counts 1 and 2--the robbery of Diego--the jury found true that defendant personally used a knife (*id.*, § 12022, subd. (b)(1)).

In the current case, the court sentenced defendant to the midterm of three years on count 1; one year each for the firearm and knife enhancements on count 1; one year (one-third the midterm) on count 2; and four months (one-third the midterm) for the knife enhancement on count 2. In a trailing case, the court sentenced him to one year (one-third the midterm) for possession of a controlled substance, for a total term of seven years four months in prison.

Defendant timely appealed. The case was fully briefed and assigned to this panel in October 2021.

## DISCUSSION

### I

### Batson*/*Wheeler

Defendant contends the prosecution intentionally exercised one of its peremptory challenges to strike a prospective juror based on his race in violation of *Batson v. Kentucky, supra*, 476 U.S. 79 and *People v. Wheeler, supra*, 22 Cal.3d 258. The trial court concluded defendant failed to make out a prima facie case of group bias and also that defendant's claim did not survive the prosecutor's arguments. We see no error under the applicable law.

A. *Procedural History*

During jury selection, prospective juror F.Y. explained that he worked as a tribal lead cultural inspector; in that role he oversaw "[p]reservation of the burials and cultural items." During questioning by the prosecutor, F.Y. volunteered that he had mostly

4

negative feelings towards law enforcement resulting from experiences that had involved him personally, his family, and his friends, and involved racial profiling in Yolo and Sacramento counties. Some of the negative experiences were recent; he noted that he was "still getting profiled today." He asserted that he would not view an officer's testimony differently from that of other witnesses, but acknowledged he would sometimes have a tendency to distrust an officer simply because they were an officer. He said he could separate that distrust from this case by listening to the testimony and doing the best that he could, and he promised to follow the court's instructions even if he did not agree with them.

The prosecutor argued unsuccessfully to the court that F.Y. should be excused for cause and then used his third peremptory challenge to excuse him. Defense counsel objected and argued that F.Y. might be Native American but looked Hispanic, there were only two Hispanic jurors, and defendant was Hispanic. Counsel asserted that no race-neutral reason supported the challenge, other than F.Y.'s negative experiences with police officers, because he affirmed that he could be fair in this case.

The prosecutor responded that there were three jurors who appeared to be Hispanic, none of whom he intended to excuse. He acknowledged that his dismissal of F.Y. was based on his negative opinion of officers; the prosecutor had more officers on his witness list than any other profession. The prosecutor asked the trial court to find defendant had made a prima facie case so his reasoning could go on the record, although he also questioned whether one peremptory challenge could amount to a prima facie case. The prosecutor added that he was Hispanic.

The trial court declined to find defendant had made a prima facie case of group bias. While observing F.Y. had darker features, the court stated it heard F.Y. say he was perhaps Native American, and the peremptory challenge was appropriate due to F.Y.'s negative views of law enforcement. The court noted that F.Y. was "a hard guy to read,"

5

his answers during voir dire "were very clipped," and "[h]e didn't elaborate on anything much."

Defendant argued: "That means almost everybody who's nonwhite who has had bad experiences with law enforcement by virtue of their race, what happens with contact with law enforcement and being racially profiled are going to be eligible to be kicked by the prosecutor just because the prosecutor wants people to believe their cops and wants white people with good experience with the cops."

The trial court again noted that there were two other Hispanic jurors, and it "[did not] find that the challenge that's been made for singling out [F.Y.] because of his race is appropriate and can survive the arguments of the People in this case."

B. *Analysis*

Prospective jurors (hereafter jurors, for convenience) may be peremptorily challenged for subjective or trivial reasons, including a juror's in-court demeanor, bare looks and gestures, or hunches, provided the reasons are genuine and not discriminatory. (See *People v. Jones* (2011) 51 Cal.4th 346, 361; *People v. Allen* (2004) 115 Cal.App.4th 542, 547.) However, "[b]oth the state and federal Constitutions prohibit the use of peremptory strikes to remove [jurors] on the basis of group bias. [Citations.] The now familiar *Batson/Wheeler* inquiry consists of three distinct steps. First, the opponent of the strike must make out a prima facie case by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose in the exercise of peremptory challenges. Second, if the prima facie case has been made, the burden shifts to the proponent of the strike to explain adequately the basis for excusing the juror by offering permissible, nondiscriminatory justifications. Third, if the party has offered a nondiscriminatory reason, the trial court must decide whether the opponent of the strike has proved the ultimate question of purposeful discrimination." (*People v. Scott* (2015) 61 Cal.4th 363, 383.)

6

When a trial court denies a *Batson*/*Wheeler* motion because it concludes the defendant failed to establish a prima facie case of group bias, we consider the entire record of voir dire and affirm if the record suggests grounds for a reasonable challenge of the jurors in question. (*People v. Panah* (2005) 35 Cal.4th 395, 439.) We "accord particular deference to the trial court as fact finder, because of its opportunity to observe the participants at first hand." (*People v. Jenkins* (2000) 22 Cal.4th 900, 993-994; *People v. Bonilla* (2007) 41 Cal.4th 313, 341 [we consider only whether substantial evidence supports the trial court's conclusions].)

Defendant asserts that our review is de novo because he challenges the legal definition of what constitutes a race-neutral justification for a peremptory challenge. (*People v. Bonilla, supra*, 41 Cal.4th at pp. 341-342.) Specifically, he contends that we should consider the effect of Assembly Bill No. 3070 (2019-2020 Reg. Sess.) (Assembly Bill No. 3070).

The appellate court in *People v. Collins* (2021) 60 Cal.App.5th 540, at page 550, footnote 6, recently described the effect of Assembly Bill No. 3070 on *Batson*/*Wheeler* claims: "The Legislature recently enacted legislation to address concerns with the *Batson*/*Wheeler* framework. It explicitly found 'the existing procedure for determining whether a peremptory challenge was exercised on the basis of a legally impermissible reason has failed to eliminate . . . discrimination. In particular, the Legislature [found] that requiring proof of intentional bias renders the procedure ineffective and that many of the reasons routinely advanced to justify the exclusion of jurors from protected groups are in fact associated with stereotypes about those groups or otherwise based on unlawful discrimination.' ([Assembly Bill No. 3070,] § 1, subd. (b).) The Legislature 'designate[d] several justifications as presumptively invalid and provide[d] a remedy for both conscious and unconscious bias in the use of peremptory challenges.' (*Ibid.*) [¶] Presumptively invalid justifications include '[e]xpressing a distrust of or having a negative experience with law enforcement or the criminal legal system' and '[h]aving a

7

close relationship with people who have been stopped, arrested, or convicted of a crime.' ([Assembly Bill No. 3070,] § 2, subds. (e)(1) & (e)(3).) Neither party notes this legislation and we do not rely on it to decide this appeal. (See *id.*, § 2, subd. (i) [new legislation 'applies in all jury trials in which jury selection begins on or after January 1, 2022.'].)"

Defendant's sole argument on appeal is that we are bound to follow the Legislature's definition of what qualifies as discriminatory purpose in exercising peremptory challenges as expressed in Assembly Bill No. 3070. However, as the court observed in *Collins*, the newly enacted legislation applies only to jury selection beginning on or after January 1, 2022, and thus Assembly Bill No. 3070 does not apply here.

Defendant concedes that, prior to the enactment of Assembly Bill No. 3070, our Supreme Court has repeatedly upheld the use of peremptory challenges based on jurors' negative experiences or perceptions of law enforcement. (See, e.g., *People v. Winbush* (2017) 2 Cal.5th 402, 436 ["negative attitude toward law enforcement" or "negative experience with law enforcement" is "a valid basis for exclusion"]; *People v. Melendez* (2016) 2 Cal.5th 1, 18 [Black juror's "distrust of police" was a race-neutral reason for excusal]; *People v. Lenix* (2008) 44 Cal.4th 602, 628 [" 'We have repeatedly upheld peremptory challenges made on the basis of a prospective juror's negative experience with law enforcement' "].) We are bound by these decisions of our Supreme Court. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) Accordingly, we reject defendant's claim of error.

II

*Other Acts Evidence*

The trial court concluded that evidence of defendant's unrelated arrest on August 8--two days after the August 6 robberies--was admissible under Evidence Code

8

sections 1101 and 352[1] as evidence of a common plan or scheme to sell drugs and as evidence of defendant's intent to do so. Defendant contends that the court abused its discretion by admitting this evidence, violating his right to due process; he argues that the evidence was irrelevant to the issues of whether he had a common plan or scheme to rob his clients or the requisite intent to commit the charged robberies.

The Attorney General does not argue that the evidence was admissible to show a common scheme or plan or intent. Rather, he argues that evidence of defendant's arrest was properly admitted to bolster Jorge's credibility as a witness and to show that defendant knew the gun used in the robbery was real and operable.

As we will explain, the evidence was not admissible to show defendant's intent to steal or a common plan or scheme to sell drugs. However, we conclude the error was harmless because it was not reasonably probable the verdict would have been more favorable to defendant in the absence of error.

A. *Procedural Background*

The prosecutor filed a motion in limine seeking admission of the facts surrounding defendant's arrest pursuant to section 1101, subdivision (b), arguing that the evidence was admissible to show defendant's intent to permanently deprive Jorge of his property. The prosecutor noted that defendant came to the scene of the charged robberies for purposes of a drug sale and was accompanied by another Hispanic man who possessed a gun; per the other acts evidence, defendant was arrested (two days after the charged offenses) while accompanied by a different Hispanic man and in possession of drugs, a gun similar in appearance to the gun used in the robberies, and cash. In both instances, defendant had the intent to sell drugs, was accompanied by a Hispanic male associate, possessed a similar-looking gun, and demonstrated his intent to protect himself or to rob

---

[1] Further undesignated statutory references are to the Evidence Code.

9

his customers if the opportunity arose. The prosecutor further argued that the evidence of defendant's arrest demonstrated his common scheme or plan to sell drugs while accompanied by an accomplice and a gun, and the gun possessed on August 8 was of a character that could have been used in the armed robbery or carried for protection while selling drugs.

During a pretrial hearing on the motion, the prosecutor observed that the charged enhancements required proof that the gun was real and operable, and Jorge had said the guns from the two incidents were similar in appearance. The prosecutor also reiterated that both instances involved defendant intending to sell drugs and employing a similar plan of selling drugs in the presence of a Hispanic male and a gun. Defendant responded that the evidence lacked probative value and was highly prejudicial.

The trial court ruled that the evidence was admissible as evidence of defendant's intent or common design. (§ 1101, subd. (b).) The court stated: "[The evidence's] relevance certainly is that, as I understand it, the facts in this case, are a gun was pulled on [Jorge]. He described it as a black or brown semiautomatic handgun. Also, there is a need for the People to prove that it was a real handgun and this was found a short period of time after the incident. And so a finding of that certainly goes to -- and the finding of the drugs, the amount of cash that was found, the Ziploc style Baggies, certainly on intent and common design, factors under [§] 1101[, subd.] (b), it has relevance." Additionally, the court concluded that the probative value of the evidence was not substantially outweighed by the prejudice to defendant.

Following the trial court's ruling, defense counsel asserted that there was no connection between the alleged robberies and defendant's possession of a gun and drugs two days later. According to counsel, evidence of defendant's arrest was only relevant "to say [defendant] is engaged in criminal activity and this is what he does. There's zero evidence saying that because he was arrested two days later means that he committed the robbery and that's what [§] 1101 is about. For intent to be something that's real in this

10

case, you would have to show that he has an intent to go robbing people for a common scheme or plan. It doesn't show any of that."

At the conference on jury instructions, defense counsel objected to the evidence again and objected to the pattern instruction on prior acts. (CALCRIM No. 375.) The court overruled the objections and instructed the jury: "The People presented evidence that the defendant committed another offense that was not charged in this case. You may consider this as evidence only if the People have proved by a preponderance of the evidence that the defendant, in fact, committed the offense. [¶] Proof by a preponderance of the evidence is a different burden of proof than proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude it is more likely than not that the fact is true. If the People have not met this burden, you must disregard this evidence entirely. [¶] If you decide the defendant committed the offense, you may, but are not required to, consider that evidence for the limited purpose of deciding whether the defendant acted with the intent to steal in this case or the defendant had a plan or scheme to commit the offenses alleged in this case. [¶] In evaluating this evidence, consider the similarity or lack of similarity between the uncharged offense and the charged offenses. Do not consider this evidence for any other purpose. Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime. [¶] If you conclude that the defendant committed the uncharged offenses, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of robbery. The People must still prove every charge beyond a reasonable doubt."

Defense counsel argued in closing that drug dealers do not rob their customers because "it's bad for business," and defendant was only trying to figure out what was happening when Jorge said he did not have the purchase money. Counsel contended that defendant did not plan a robbery because the incident occurred in the middle of the day in a residential area, the incident took 15 minutes, defendant did not search the glove

11

compartment, and he left with no money. Counsel argued the incident was a drug deal in which the purchaser brought no money, the driver got mad and took out a gun, and defendant had no control, and added that evidence of the August 8 arrest had nothing to do with the alleged robberies on August 6, was prejudicial and irrelevant, and only showed that defendant was "involved with criminal activity and knows people who sell a lot of drugs and are involved in criminal activity." Counsel noted the investigator's testimony that there was no evidence the gun used in the August 6 robbery was the same gun found in the motel room on August 8. Counsel further observed that if defendant possessed the same gun on August 6 that was found on August 8, that fact would support the conclusion that there was no plan to rob Jorge because defendant did not pull out a gun on August 6.

In his rebuttal argument, the prosecutor asserted that the August 8 arrest related to defendant's intent on August 6 because on August 8 he was found with a gun and drugs, and drug dealers carry guns because they are fearful of being robbed and so they can rob their clients.

The trial court later denied defendant's motion for new trial based on the admission of this evidence.

B. *Legal Background*

"Evidence of crimes committed by a defendant other than those charged is inadmissible to prove criminal disposition or a poor character. '[B]ut evidence of uncharged crimes is admissible to prove, among other things, the identity of the perpetrator of the charged crimes, the existence of a common design or plan, or the intent with which the perpetrator acted in the commission of the charged crimes. (§ 1101.) Evidence of uncharged crimes is admissible to prove identity, common design or plan, or intent only if the charged and uncharged crimes are sufficiently similar to support a rational inference of identity, common design or plan, or intent.' " (*People v. Lenart* (2004) 32 Cal.4th 1107, 1123 (*Lenart*).) "To be relevant to prove identity, the uncharged

12

crime must be highly similar to the charged offenses, while a lesser degree of similarity is required to establish relevance to prove common design or plan, and the least similarity is required to establish relevance to prove intent." (*Ibid.*) For purposes of section 1101, subdivision (b), the acts by the defendant may occur either before the charged conduct or after. (*People v. Leon* (2015) 61 Cal.4th 569, 597.)

"Finally, for uncharged crime evidence to be admissible, it must have substantial probative value that is not greatly outweighed by the potential that undue prejudice will result from admitting the evidence." (*Lenart, supra*, 32 Cal.4th at p. 1123.) "Without doubt, evidence a defendant committed an offense on a separate occasion is inherently prejudicial." (*People v. Tran* (2011) 51 Cal.4th 1040, 1047.) But " '[e]vidence is substantially more prejudicial than probative . . . [only] if, broadly stated, it poses an intolerable "risk to the fairness of the proceedings or the reliability of the outcome." ' " (*Ibid.*)

" 'On appeal, the trial court's determination of this issue, being essentially a determination of relevance, is reviewed for abuse of discretion.' " (*Lenart, supra*, 32 Cal.4th at p. 1123.) We will only reverse a trial court's ruling on such matters if it is shown " ' " 'the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " ' " (*People v. Jefferson* (2015) 238 Cal.App.4th 494, 502.) In reviewing the trial court's ruling, we must consider the facts that were before the trial court at the time of its ruling. (*People v. Hendrix* (2013) 214 Cal.App.4th 216, 243.) "Consequently, we look to the prosecution's offers of proof in determining error." (*Ibid.*)

C. *Intent*

To prove that defendant was guilty of the robberies, the prosecution was required to prove that defendant "intended to deprive the owner of the property permanently or to remove the property from the owner's possession for so extended a period of time that the owner would be deprived of a major portion of the value or enjoyment of the

13

property." (CALCRIM No. 1600.) The trial court concluded that the evidence of defendant's arrest was relevant to show his intent to commit the charged robberies, and it instructed the jury that it could consider the evidence for the limited purpose--as relevant here--of deciding whether he acted with the intent to steal.

Defendant contends the evidence of his arrest was irrelevant to the requisite intent because it only showed his intent to possess a gun and drugs for sale, not his intent to commit a robbery. The Attorney General does not respond to this argument. We agree that the unrelated arrest was not admissible to prove defendant's intent to steal from Jorge and Diego.

To establish relevance on the issue of intent, " 'the uncharged misconduct must be sufficiently similar [to the charged offenses] to support the inference that the defendant " 'probably harbor[ed] the same intent in each instance.' " ' " (*People v. Leon, supra*, 61 Cal.4th at p. 598.) " ' "The inference to be drawn is not that the actor is *disposed* to commit such acts; instead, the inference to be drawn is that, in light of the first event, the actor, at the time of the second event, must have had the intent attributed to him by the prosecution." ' " (*People v. Chism* (2014) 58 Cal.4th 1266, 1306.) " '[T]he recurrence of a similar result . . . tends (increasingly with each instance) to negative accident or inadvertence or self-defense or good faith or other innocent mental state, and tends to establish (provisionally, at least, though not certainly) the presence of the normal, i.e., criminal, intent accompanying such an act.' " (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402, superseded by statute on other grounds as explained in *People v. Falsetta* (1999) 21 Cal.4th 903, 911-913.)

As we have described, two days after the robberies, defendant was arrested when found in a motel room with another man, a significant amount of cash and drugs, and a gun. There are general similarities in defendant's behavior on August 6 and August 8, as recognized by the prosecutor and the trial court, in that defendant in both instances was accompanied by another man, either he or the other man possessed a gun, and there was

14

drug-related conduct. However, there are important differences in defendant's conduct on the two dates. There is no evidence that defendant committed or intended to commit a robbery on August 8. While defendant possessed a gun, that alone does not suggest that defendant intended to commit a robbery. Additionally, while the evidence showed that the meeting between Jorge and defendant was predicated on a drug transaction, there is no evidence that any drugs were present during the August 6 robberies. Thus, the evidence of defendant's August 8 arrest had no tendency to prove that defendant intended to commit any robbery. Accordingly, the assertion by the prosecutor that defendant was waiting for the opportunity to commit a robbery on August 8 is completely speculative. Indeed, the circumstances of defendant's arrest tended instead to support *defendant's* claim at trial that he was a drug dealer who was confused by the fact that Jorge did not bring money to the transaction and was trying to figure out what was happening by asking if Jorge was attempting to rob *him*.

There is no basis upon which to conclude that defendant's possession of drugs for sale and a gun--in the absence of any intent to rob anyone--was relevant to show his intent to commit the charged robberies. Admission for this reason was error.

D. *Common Design or Plan*

Defendant contends the trial court abused its discretion when it concluded that the charged robberies and uncharged drug and gun possession were part of a common plan or scheme; he observes the uncharged acts evidence do not tend to show that he had any plan or scheme to rob drug purchasers. The Attorney General again fails to respond to this argument; we agree with defendant on this point as well.

To establish relevance on the issue of common design or plan, " 'the common features must indicate the existence of a plan rather than a series of similar spontaneous acts, but the plan thus revealed need not be distinctive or unusual.' " (*People v. Kipp* (1998) 18 Cal.4th 349, 371.) Rather, "[e]vidence that the defendant possessed a plan to commit *the type of crime with which he or she is charged* is relevant to prove the

defendant employed that plan and committed the charged offense." (*People v. Balcom* (1994) 7 Cal.4th 414, 424, italics added.) As we have just discussed, there was no such evidence because nothing about the other acts evidence suggested that defendant planned to commit a robbery.

Apparently recognizing that the other acts evidence included no evidence of a robbery, the prosecutor argued at the hearing on the motion that in both instances defendant possessed a common plan or scheme *to sell drugs*, and the trial court concluded that the evidence surrounding defendant's arrest was relevant to show his common plan, without specifying the nature of that plan. But while the other acts evidence may have tended to show defendant's intent to sell drugs, we fail to see how that evidence tended to show his common plan to commit robberies (see *People v. Balcom, supra*, 7 Cal.4th at p. 424), and the Attorney General's briefing does not defend the finding. We recognize that defendant or his accomplice possessed a similar-looking gun on both dates, but there is no evidence that the guns were possessed for the same purpose. Admission of the August 8 evidence as a common plan was error.

E. *Knowledge of Gun and Credibility of the Victim*

The Attorney General raises two other arguments for the admissibility of the other acts evidence. First, he argues that the evidence was properly admitted to bolster Jorge's credibility as a witness, which was disputed at trial. Second, he asserts that evidence of the gun seized from the motel room was relevant and admissible because the gun could have been the same gun used in the robberies. The trial court recognized that evidence suggesting the gun seized from the motel room was the same gun used in the robberies was relevant to show that the gun used in the robberies was a real gun, which the prosecution was required to prove. Disagreeing, defendant responds there is no evidence that the seized gun was the same gun used during the charged robberies, and the incidents in which the guns were possessed were entirely different.

16

We need not resolve these issues because the jury was instructed that it could consider the evidence only for the *limited purposes* of deciding whether defendant acted with the intent to steal or whether he had a plan or scheme to commit the charged offenses. The jury was expressly instructed that it was *not* to consider the evidence for any other purpose, which would include the narrow question of whether the driver brandished a real, operable gun during the robbery, or to bolster Jorge's credibility. (See *People v. Ewoldt, supra*, 7 Cal.4th at pp. 407-408 [refusing to consider whether evidence of uncharged misconduct was admissible on another basis because evidence not admitted for that purpose, and jury was not instructed to consider evidence for that purpose].) Thus we need not consider whether the other acts evidence would have been admissible on these bases; that determination is irrelevant to our analysis of error under the circumstances of this case.

F. *Harmless Error*

"[T]he admission of evidence, even if erroneous under state law, results in a due process violation only if it makes the trial *fundamentally unfair*." (*People v. Partida* (2005) 37 Cal.4th 428, 439.) "Absent fundamental unfairness, state law error in admitting evidence is subject to the traditional *Watson* test: The reviewing court must ask whether it is reasonably probable the verdict would have been more favorable to the defendant absent the error." (*Ibid*.) While it was error to admit this evidence, we conclude that it did not render defendant's trial fundamentally unfair, and therefore we apply the *Watson* test in evaluating prejudice.

"[T]he *Watson* test for harmless error 'focuses not on what a reasonable jury *could* do, but what such a jury is *likely* to have done in the absence of the error under consideration. In making that evaluation, an appellate court may consider, among other things, whether the evidence supporting the existing judgment is so *relatively* strong, and the evidence supporting a different outcome is so *comparatively* weak, that there is no reasonable probability the error of which the defendant complains affected the result.' "

17

(*People v. Beltran* (2013) 56 Cal.4th 935, 956.) " 'A "reasonable probability" "does not mean more likely than not, but merely a *reasonable chance*, more than an *abstract possibility*." [Citation.] It "does not mean 'more likely than not,' but merely 'probability sufficient to undermine confidence in the outcome.' " [Citation.] Therefore, reversal is necessary when it cannot be determined whether or not the error affected the result, as in such a case there "exists . . . at least such an equal balance of reasonable probabilities" " 'that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of error.' " ' " (*People v. Rodriguez* (2021) 68 Cal.App.5th 301, 324.) As we will explain, we conclude the admission of the other acts evidence was harmless here, because there was no reasonable probability that defendant would have obtained a more favorable result absent the error.

As we have discussed *ante* and also detail below, there was strong evidence of guilt in this case. Although defendant argues to the contrary, as we next explain, we disagree with each of his arguments.

First, defendant asserts that the evidence was weak because there was little circumstantial evidence aside from Jorge's testimony. But Jorge, who had known defendant for many years, and Diego *each* identified defendant as the robber. Jorge testified about how defendant and the driver held him at gun and knife point and took his belongings, and Diego supported Jorge's testimony by testifying that defendant searched Jorge's car and stole his knife and their driver's licenses. Their testimony was corroborated by Jorge's Snapchat record, which demonstrated that defendant and Jorge agreed to meet for purposes of a marijuana transaction, and by Jorge's and Diego's statements to Officer Bell moments after the robbery, in which Bell noted that Jorge was visibly upset and had a swollen lip.[2] Thus both Jorge and Diego unambiguously

---

[2] Jorge's and Diego's statements to Bell were played for the jury.

18

identified defendant as the perpetrator of the crime at trial, and there is nothing to suggest that either man was mistaken in their identification. Defendant notes that Diego never saw the gun, but there is no reason to believe he would have--Jorge testified that the driver kept the gun trained on him while defendant went to search Jorge's car, and Diego corroborated that testimony by confirming that only defendant searched Jorge's car while he was in it. Similarly, in his statement to the officer, Diego stated that only defendant searched Jorge's car for money, and he never got a good look at the driver.

Second, defendant contends that Jorge's trial testimony differed substantially from his original statement to Officer Bell. He points to the fact that Jorge told Bell he was buying one ounce of marijuana for $150, and he testified at trial that he was buying one or two ounces of marijuana for $400 to $500. He also observes that Jorge did not tell the officer that defendant had taken his driver's license or other items. But these insignificant details were unlikely to affect Jorge's credibility. Jorge reported the robbery minutes after it had occurred, immediately identified defendant as one of the robbers, and said that the robbers had stolen his and Diego's phones. Whether Jorge intended to buy one or two ounces, the exact price of the marijuana, and whether he informed Bell of each specific item defendant stole is substantially less important than his recollection of what occurred during the robbery, and Jorge's testimony as to the events of the robbery was consistent between his statement to the officer and his trial testimony. Moreover, Jorge expressly testified that he did not remember the exact price and quantity of the marijuana because it had been a year since the incident.

Third, defendant contends that Jorge's trial testimony contained multiple logical holes, arguing that Jorge could not explain why he decided to purchase marijuana from defendant rather than from a dispensary, where he purchased marijuana on other occasions. But Jorge testified that he decided to purchase marijuana from defendant because he stumbled upon defendant's social media post about having marijuana for sale; he testified that he purchased marijuana both from the dispensary and from people he

19

knew, he had purchased marijuana from defendant previously without incident, and the dispensary was "[p]robably closed" that day.

Defendant also claims that Jorge had no reason to chase him after the robbery concluded, but Jorge testified that he was upset and angry about what had happened and chased the Malibu out of anger, and he stopped upon realizing it was a poor choice. Additionally, in his statement to Bell, Jorge said that he intended to chase the Malibu so he could "call someone," but he did not have his phone.

Defendant next contends that Jorge had no reason to fail to bring the money to pay for the marijuana to defendant's car when he went there to examine the marijuana. However, Jorge testified that he asked to see the marijuana because he would not "hand the person money without getting anything back," and it was reasonable for Jorge to secure the money until he was satisfied with the product he was purchasing. We acknowledge that Jorge testified that he did not have a reason to fear defendant before the robbery, but we do not agree that Jorge's testimony lacked credibility because he locked the cash to purchase the marijuana in his glove compartment until he could examine the product.

Fourth, defendant asserts incorrectly that Jorge needed to pull up social media documents to identify defendant. Jorge immediately told Officer Bell that he knew defendant, referring to him as "Carlos," and he identified defendant at trial, explaining that he knew defendant from school. While Jorge never identified the driver who pulled the gun on him, Jorge told Bell and testified at trial that he had seen the driver before but did not know him. We fail to see how Jorge's inability to identify the driver negatively affects his immediate and unwavering identification of defendant as the passenger of the car. Similarly, we reject defendant's assertion that evidence suggested Jorge had deleted portions of the Snapchat conversation. Jorge testified that he was able to save some of the Snapchat conversation, but either defendant or the application itself deleted the remainder of the messages; this is a feature of the application.

20

In addition to the issues defendant raises with Jorge's testimony, he contends that the other acts evidence painted him as a far more dangerous, far less credible, and far more criminal person than Jorge, and tended to provoke an emotional bias against him. However, the evidence added little to what had already been presented to the jury-- including defendant's participation in armed robberies and that he was a drug dealer and a Norteño gang member (as we discuss in more detail *post*). We fail to see how additional evidence that defendant sold drugs could be significantly more provocative than the evidence already before the jury.

Next, we disagree that defendant showed a reasonable likelihood of a more favorable result based on the assertion that the August 8 evidence prevented him from testifying in his own defense. Assuming for the sake of argument that this prevention occurred, there is nothing to suggest that defendant's testimony would have provided a more viable defense than that offered at trial. Additionally, the jury was properly instructed that defendant had the absolute constitutional right to not testify and that it was prohibited from considering for any reason that defendant did not testify. (CALCRIM No. 355.)

Finally, we observe that the trial court properly instructed the jury with CALCRIM No. 375 to limit consideration of the other acts evidence. The jury was told to only consider the other acts for purpose of determining whether "defendant acted with the intent to steal" or had a common plan or scheme and that the other acts evidence was only one factor it could consider when deciding whether defendant was guilty of the charged robberies. It was told that by itself the uncharged offense was not enough to establish guilt, and that the prosecutor still had to prove the current charge beyond a reasonable doubt. We must presume the jury understood and properly applied that instruction. (*People v. Buenrostro* (2018) 6 Cal.5th 367, 431; *People v. Jones, supra*, 51 Cal.4th at p. 371.)

21

III

*Evidence of Defendant's Gang Membership*

Defendant contends the trial court erred by admitting evidence of his gang membership under sections 1101 and 352, violating his right to due process. We conclude defendant has forfeited his argument with respect to section 1101, and we disagree that the trial court abused its discretion by not excluding the evidence pursuant to section 352.

A. *Background*

There were no gang enhancements charged. Defendant filed an in limine motion requesting that no testimony identify him as a Norteño gang member because that evidence was substantially more prejudicial than probative, citing only section 352. The trial court concluded that defendant's gang membership was relevant to the issue of whether Jorge would be in fear when a gun and knife were pulled on him knowing that a gang member was involved, and the prejudice of that testimony did not substantially outweigh its probative value.

Jorge testified that he was afraid during the robberies because he thought he was going to be shot and because defendant pointed a knife at him. On redirect examination, the prosecutor returned to the issue of Jorge's fear and asked him whether he was concerned that defendant knew his address based on defendant's membership in any "organizations." The court overruled several objections from defense counsel that the question had been asked and answered. Jorge answered: "He was a Norteño." Jorge added that he had been scared since the incident occurred.

Defense counsel later moved for a mistrial based on Jorge's testimony that defendant was a Norteño. Counsel contended that Jorge had repeatedly been asked why he was afraid, and he consistently answered that he was afraid because of the gun. Counsel further argued that the reference to defendant's gang membership was hearsay. The trial court denied defendant's motion.

22

In closing, defense counsel argued that Jorge never said he was afraid of defendant because he was a Norteño, and she added that defendant's gang membership had no relevance other than the prosecutor trying to "prejudice [the jury] against [defendant]."

B. *Forfeiture*

A defendant's failure to proffer a timely and specific objection in the trial court on the ground asserted in the appeal forfeits appellate review. (*People v. Demetrulias* (2006) 39 Cal.4th 1, 20-21, citing § 353.) Here, defendant never objected to Jorge's testimony regarding defendant's gang membership under section 1101, and thus his arguments pertaining to that code section have been forfeited.

C. *Section 352*

"[A]n appellate court applies the abuse of discretion standard of review to any ruling by a trial court on the admissibility of evidence, including one that turns on the relative probativeness and prejudice of the evidence in question [citations]. Evidence is substantially more prejudicial than probative (see [ ] § 352) if, broadly stated, it poses an intolerable 'risk to the fairness of the proceedings or the reliability of the outcome.' " (*People v. Waidla* (2000) 22 Cal.4th 690, 724.) " ' "[R]eversal of the judgment is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." ' " (*People v. Lewis* (2009) 46 Cal.4th 1255, 1286.)

"In cases *not* involving the gang enhancement, [our Supreme Court has] held that evidence of gang membership is potentially prejudicial and should not be admitted if its probative value is minimal. [Citation.] But evidence of gang membership is often relevant to, and admissible regarding, the charged offense. Evidence of the defendant's gang affiliation—including evidence of the gang's territory, membership, signs, symbols, beliefs and practices, criminal enterprises, rivalries, and the like—can help prove identity, motive, modus operandi, specific intent, means of applying force or fear, or other issues

pertinent to guilt of the charged crime." (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1049.)

Here, defendant was charged with robbing Jorge, the elements of which include the taking of personal property from a victim by means of force or fear. (Pen. Code, § 211.) Evidence that Jorge knew of defendant's gang membership was relevant to whether he was afraid. (See *People v. Mendoza* (2000) 24 Cal.4th 130, 178, superseded by statute on other grounds as stated in *People v. Brooks* (2017) 3 Cal.5th 1, 62-63 and footnote 8.)

Defendant asserts that the probative value of the evidence was minimal because Jorge did not testify that he was afraid of defendant due to his gang membership until pressed, and the prosecutor did not appear to know how to incorporate defendant's gang membership into his closing argument. But these arguments are irrelevant to the issue before us. "We review the correctness of the trial court's ruling at the time it was made, . . . and not by reference to evidence produced at a later date." (*People v. Welch* (1999) 20 Cal.4th 701, 739.) As we have discussed, at the time the court made its ruling, it noted that defendant's gang membership was relevant to the issue of whether Jorge was afraid, and the prejudice of that evidence did not substantially outweigh its probative value. The court's conclusion was not an abuse of discretion at the time it was made.[3]

---

[3] Defendant also contends that cumulative error prejudiced his trial. Because we have only identified one error in this case, which we concluded was harmless, there are not sufficient errors to cumulate. Accordingly, this claim fails.

## DISPOSITION

The judgment is affirmed.

_____/s/_____
Duarte, J.

We concur:


_____/s/_____
Blease, Acting P. J.


_____/s/_____
Krause, J.